WILLIAM D. KRAEMER, APPELLANT AND CROSS RESPONDENT, *v.* MARGARET KRAEMER, RESPONDENT AND CROSS APPELLANT, RALPH E. LARRABEE, RESPONDENT.

No. 4538

June 6, 1963                     382 P.2d 394

---

*G. William Coulthard* and *Franklin N. Smith,* of Las Vegas, for William D. Kraemer.

*Dwight B. Claar, Jr.,* of Las Vegas, for Margaret Kraemer.

*William Singleton* and *Rex A. Jemison,* of Las Vegas, for Ralph E. Larrabee.

# OPINION

By the Court, THOMPSON, J.:

Margaret Kraemer filed suit for divorce, alleging extreme cruelty and requesting alimony. Additionally she charged that William, her husband, had conspired with Ralph Larrabee (who was also named a defendant) to deprive her of an interest in the Forty-Niner Motel, Las Vegas, Nevada. William answered, pleading a prior interlocutory California decree obtained by Margaret as res judicata. He and Larrabee also denied the conspiracy charge. After trial the district court entered a judgment with which neither Margaret nor William was pleased. William appealed, assigning errors, and Margaret filed a cross-appeal, doing the same. Larrabee is here as a respondent to Margaret's cross-appeal. The appeal and cross-appeal require us to dispose of the following questions: (1) Is the California interlocutory decree a final judgment and res judicata as to alimony? (2) Was Margaret lawfully entitled to a Nevada divorce on the grounds of extreme cruelty or three years' separation without cohabitation? (3) Did the lower court correctly find that William had no interest in the motel, and were certain incidental orders relating to the receivership thereof lawfully entered? The evidence relevant to each question will be related as that question is discussed.

(1) Margaret first instituted suit in California. William answered. On March 27, 1961, the California court granted Margaret an interlocutory decree of divorce and ordered William to pay alimony of $200 a month for 24 months. Within two months Margaret sued again for divorce, this time in Nevada. William appeared.

Inter alia he pleaded the California interlocutory decree as res judicata to Margaret's renewed request for alimony. The lower court rejected the defense and awarded Margaret the lump sum of $10,000 as alimony. This, we think, was error. In taking judicial notice of California law as expressed in reported court opinions of that state (Choate v. Ransom, 74 Nev. 100, 323 P.2d 700) we find that, though the interlocutory decree is not a final judgment determining marital status (Estate of Dargie, 162 Cal. 51, 121 P. 320; Estate of Seiler, 164 Cal. 181, 128 P. 334; 1 California Family Law, Armstrong, at 248), it is deemed final in all other respects. (Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A.,N.S., 880; Huneke v. Huneke, 12 Cal.App. 199, 107 P. 131; Borg v. Borg, 25 Cal.App.2d 25, 76 P.2d 218; Overell v. Superior Court, 29 Cal.App.2d 418, 84 P.2d 789; Parnham v. Parnham, 32 Cal.App.2d 93, 89 P.2d 189; Wilson v. Superior Court, 31 Cal.2d 458, 189 P.2d 266). In Wilson the court stated, inter alia: "The right to alimony, like other financial and property rights of the parties, is properly at issue at the time the cause of action for divorce is tried and determined, and the ensuing interlocutory decree is intended to bring an end to all matters so litigated and in controversy * * *." In Estate of Abila, 32 Cal.2d 559, 197 P.2d 10, the California Supreme Court held that an interlocutory decree of divorce terminates the obligation of support in the absence of a provision therefor. There is no jurisdiction to grant it later unless the right has been reserved. In the instant case, the right was not reserved, nor did Margaret or William appeal from the interlocutory decree. The time within which they could have done so passed before the Nevada case was tried. The doctrine of res judicata forbids relitigation of the alimony issue in Nevada.[1]

(2) The basis of Margaret's request for divorce in California was William's cruelty. An interlocutory decree was granted to her on that ground. Her later suit

---

[1] In Crayne v. Crayne, 54 Nev. 205, 13 P.2d 222, 84 A.L.R. 716, we held that a California interlocutory decree was not a final judgment as to marital status and, therefore, not res judicata as to that issue in a later Nevada divorce action. The question of the finality of such a decree as to alimony was not involved.

in Nevada was also predicated on extreme cruelty. However, near the end of trial, she was permitted to amend to plead three years' separation without cohabitation as an additional cause. The court deemed the complaint as thus amended denied by William, but refused him a continuance for the purpose of preparing a defense to the new cause of action. The court found that each ground for divorce was supported by the evidence. However, the decree was entered on the ground of three years' separation without cohabitation, the court believing that the prior California interlocutory decree was res judicata as to the ground of extreme cruelty.

On appeal William's contention is two-fold; first, that the record does not reflect that their separation was voluntary on the part of at least one spouse (Caye v. Caye, 66 Nev. 78, 203 P.2d 1013, 211 P.2d 252; Sutherland v. Sutherland, 75 Nev. 304, 340 P.2d 581; Pearson v. Pearson, 77 Nev. 76, 359 P.2d 386), with the result that a claim for relief, based upon the ground of three years' separation without cohabitation, was not proven; and, second, that in any event he should have been granted a continuance to prepare his defense to that charge. It is not necessary to answer either contention. The ground of extreme cruelty was satisfactorily proven. The California interlocutory decree is not a final judgment as to that issue (Estate of Dargie, 162 Cal. 51, 121 P. 320; Estate of Seiler, 164 Cal. 181, 128 P. 334; Crayne v. Crayne, 54 Nev. 205, 13 P.2d 222, 84 A.L.R. 716), and the judgment granting Margaret a divorce may properly be affirmed on that ground. (Cf. Nelson v. Sierra Construction Corp., 77 Nev. 384, 364 P.2d 402, where we again acknowledged the rule that a correct judgment will not be reversed simply because it was based on the wrong reason.)

(3) Margaret's prime concern in this case is over the loss of her interest in the Forty-Niner Motel. Though this circumstance has produced unfortunate consequences for her, there appears to be no legal basis upon which we may accord her relief. She was purchasing the motel when she married William. The purchase price was $120,000. She paid $30,000 down, plus a diamond,

and a mink coat. The balance was evidenced by two promissory notes totaling $85,500, secured by separate trust deeds on the property. After the marriage, William loaned Margaret $43,065 with which to enlarge and improve the motel. This was done. They became embroiled in recriminations. William sued to recover the sum loaned. He was successful. Kraemer v. Kraemer, 76 Nev. 265, 352 P.2d 253. Seeking to satisfy his judgment, William requested the Clark County sheriff to sell Margaret's interest in the motel at execution sale. On August 29, 1960 the sheriff, at public auction, sold Margaret's interest therein to William whose lawyer submitted the high bid of $43,000 on William's behalf. William thus acquired all of the right, title, interest and claim of Margaret (his judgment debtor) in the motel, NRS 21.190, subject to Margaret's right to redeem within one year thereafter. NRS 21.200–21.210. Margaret did not redeem, and the record is barren of proof that she was financially able to do so. William permitted Margaret to remain at the motel and run it. About nine months later, May 15, 1961, because of default in payment of the note obligations, the trustee under the first deed of trust sold the grantor's title (originally Margaret's, but then William's because of the execution sale of August 29, 1960) to Larrabee who submitted the high bid of $70,000. NRS 107.080.

Margaret complains bitterly that William and Larrabee conspired to procure the trustee's sale, thereby cutting off her right to redeem which would not have expired until August 29, 1961. The trial court rejected her accusation. The record readily supports that court's view. William and Larrabee, though friends of long standing, deny such a scheme. Of greater significance, however, is the absence of evidence to indicate that the trustee acted other than on its own initiative and for the protection of the beneficiaries in conducting the trustee's sale. Furthermore, Margaret admitted that she was financially unable to redeem the property. Thus she is in no position to contend that her failure to do so was in consequence of representations made to her by William.

The present suit was filed three days before the advertised trustee's sale was to occur. Margaret therefore requested and received a restraining order blocking the prospective transfer of title from the trustee to the successful bidder. Subsequently she amended her complaint and named the trustee (United Title Insurance Company) and Larrabee as defendants. The restraining order was continued in effect until conclusion of the trial on the merits. Some provision, pending litigation, had to be made regarding the motel business. The court therefore ordered that Margaret continue the management thereof as receiver, accountable for income and expenditures. As security for the performance of her duties in that capacity, and for the damages, if any, caused Larrabee (who had not been able to acquire possession of the property which he had purchased), the court directed that Margaret's furniture in the motel (her separate property) remain there. There can be no question about the court's power to appoint a receiver under such circumstances, NRS 32.010(6); 95 A.L.R. 902; nor was the security requirement unreasonable. To the contrary. Security against the possible wrong to Larrabee was manifestly fair, and Margaret's motel furniture was available for that purpose. Margaret consented to the arrangement, and we will not now accord validity to her complaint regarding it.

We therefore conclude that the provision of the judgment requiring William to pay Margaret a lump sum alimony of $10,000 is reversed; that the provision of the judgment relative to the proceeds remaining from the trustee's sale and in the possession of United Title Insurance Company (stated to be $8,758.33) is modified and that company shall, after paying valid liens, if any, against said sum, pay $2,600 thereof to Margaret,[2] and the balance, if any there be, to William. In all other respects the judgments appealed from are affirmed.

[2]The lower court found that, as of April 20, 1962 (the date of the findings of fact), William had made no alimony payments to Margaret as required by the California interlocutory decree. This finding is supported by evidence. As of that date $2,600 was due Margaret. Cf. Biel v. Godwin, 69 Nev. 189, 245 P.2d 997.

Margaret shall promptly submit to the lower court an accounting of her receivership, at which time said court shall take appropriate action respecting the security furnished by her, based, of course, upon evidence to be then presented. Her request for fees as receiver and for an allowance with which to pay accountants is not before us, as the judgments appealed from did not deal with those matters. The lower court must, therefore, make those determinations. The cause is remanded for entry of judgment in accordance herewith. No costs are allowed.

BADT, C. J., and GREGORY, D. J., concur.

McNAMEE, J., having disqualified himself, the Governor designated Honorable Frank B. Gregory, Judge of the First Judicial District Court, to sit in his place and stead.