WILLIS O. MIZNER, APPELLANT, *v.*
RUTH E. MIZNER, RESPONDENT.

No. 5396

April 15, 1968          439 P.2d 679

[Rehearing denied April 30, 1968]

*Richard C. Minor,* of Reno, for Appellant.

*Belford and Anglim,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

We are asked to set aside a partial summary judgment of our district court in so far as it accords full faith and credit to an alimony award contained in a California interlocutory divorce decree entered upon extraterritorial personal service of process. It is our opinion that the district court ruled correctly.

Mr. and Mrs. Mizner maintained their matrimonial domicile at Kings Beach, Lake Tahoe, California, from April 1947 to March 1965. They separated and the husband moved to Nevada. In May of the following year, 1966, he commenced an action for divorce here. Within a month, the wife filed suit for divorce in California and, on December 6, 1966, was awarded an interlocutory judgment of divorce, certain property located in California, and $300 a month alimony. In the California case personal service of process was made upon the defendant husband at his residence in Reno, Nevada. In January 1967 the wife appeared in the Nevada case asserting that the California interlocutory judgment was entitled to full faith in Nevada with regard to alimony and property, and thereafter filed a motion for partial summary judgment with respect to those issues. Her motion was granted and this appeal by the husband followed. The husband concedes that the California

court had jurisdiction to grant an interlocutory divorce to the wife and to award her property located within that state. He also concedes, as he must, that the California interlocutory judgment is a final judgment in all respects except as to marital status, if entered with jurisdiction. Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963). His attack on appeal is directed solely to the validity of that part of the interlocutory judgment which awards alimony, contending that the California court was without jurisdiction to enter an in personam judgment upon extraterritorial personal service of process. It is his position that the Due Process Clause precludes jurisdiction, and he reminds us that in 1877 the Supreme Court of the United States established the rule that a court may take personal jurisdiction over the defendant only if process was served upon him personally within the state. Pennoyer v. Neff, 95 U.S. 714. Since such did not occur here, the California judgment must fall. We turn to examine the validity of this position in the light of recent developments in this area of the law.

1.    The rule of Pennoyer has been substantially eroded by the High Court. Gambs v. Morgenthaler, 83 Nev. 90, 423 P.2d 670 (1967). Nondomiciliaries of the forum state have been subjected to the personal jurisdiction of that state without offending the demands of either procedural or substantive due process. International Shoe Co. v. Washington, 326 U.S. 310 (1945); Travelers Health Ass'n v. Virginia, 339 U.S. 643 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952); McGee v. International Life Ins. Co., 355 U.S. 220 (1957); Hanson v. Denckla, 357 U.S. 235 (1958). In International Shoe, supra, the court wrote: "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316.

None of the cited cases involves a personal judgment for alimony. Still, it seems to us that the minimum contacts concept of in personam jurisdiction is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this time that strict application of the Pennoyer rule to family support cases has encouraged migratory divorce by offering a

shield to a spouse wishing to avoid financial responsibility.[1] The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy "traditional notions of fair play and substantial justice." The demands of due process are satisfied in these circumstances.[2] The dissenting opinion suggests that May v. Anderson, 345 U.S. 528 (1953), is contra. Reliance upon that case is misplaced. In May, there was no statute authorizing service outside the state on the mother in a child custody case, nor did the court consider whether personal jurisdiction could be based upon past contacts with the state. Thus, the problem confronting us was not reached in May.

2. Extraterritorial personal service of process was effected in this case pursuant to California Code of Civil Procedure § 417, which provides: "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service."

The California courts have construed § 417 to support personal jurisdiction over an absent defendant personally served outside of the state if he was a domicilliary of California when suit was commenced (Allen v. Superior Court, 259 P.2d 905 (Cal. 1953); Smith v. Smith, 288 P.2d 497 (Cal. 1955)), or domiciled in that state when the cause of action arose (Owens

---

[1]The divisible divorce doctrine has nothing to do with the problem at hand since in those cases the support awarding state clearly had in personam jurisdiction over the defendant within the Pennoyer rule. See: Estin v. Estin, 334 U.S. 541 (1948); Vanderbilt v. Vanderbilt, 354 U.S. 416 (1957); Summers v. Summers, 69 Nev. 83, 241 P.2d 1097 (1952).

[2]Illinois and Kansas have enacted statutes specifically fashioned to acquire in personam jurisdiction over a non-resident defendant in a divorce action by extraterritorial personal service of process. See for comment upon these statutes: 16 De Paul L.Rev. 45 (1966–67), "Extension of the Illinois Long Arm Statute: Divorce and Separate Maintenance"; 13 U.Kan.L.Rev. 554 (1964–65), "Extraterritorial in Personam Jurisdiction: The Substantive Due Process Requirement."

v. Superior Court, 345 P.2d 921 (Cal. 1959) ). Owens was a personal injury suit. The cause of action arose in California when defendant was a resident there but, before the action was commenced, defendant became a permanent resident of Arizona. Chief Justice Traynor noted that the requirements of procedural due process were satisfied, since no more certain provision for defendant's receipt of actual notice of pending litigation against him could be made than through the specified personal service of process. The Chief Justice then turned his attention to substantive due process, noting that the defendant was domiciled in California when the cause of action arose, and that the cause of action arose directly out of the defendant's activities there. In such circumstances the court concluded that the purpose of due process was fulfilled "because it is reasonable and fair to require a defendant whose voluntary acts have given rise to a cause of action in a state to litigate his responsibility for that conduct at the place where it occurred." Id. at 925. The rationale of Owens has been applied in California to divorce and alimony. Soule v. Soule, 14 Cal.Rptr. 417 (Cal.App. 1961). In that case both parties were domiciled in California when the cause of action arose, but before suit was commenced the husband moved permanently to Montana where he was personally served with process. He did not appear. The wife was granted an interlocutory judgment of divorce and alimony. The husband then appeared specially and sought to delete the alimony provision. He was not successful.

Soule is squarely on point with the case at hand. Here, the parties were domiciled in California until their separation. Presumably, the wife's cause of action for cruelty arose out of the husband's conduct while they were living together. The interlocutory judgment was entered by a court of general jurisdiction and carries with it the presumption of validity. Milliken v. Meyer, 311 U.S. 457 (1940). We are not at liberty to ignore the construction placed upon § 417 by the California courts. Rather, we must honor their view. Farnham v. Farnham, 80 Nev. 180, 183, 391 P.2d 26 (1964); Kraemer v. Kraemer, 79 Nev. 287, 290, 382 P.2d 394 (1963); Choate v. Ransom, 74 Nev. 100, 323 P.2d 700 (1958); Summers v. Summers, 69 Nev. 83, 241 P.2d 1097 (1952). The California judgment is entitled to full faith and credit. Biel v. Godwin, 69 Nev. 189, 245 P.2d 997 (1952).

For the reasons expressed the judgment below is affirmed.

Zenoff and Mowbray, JJ., concur.

COLLINS, J., dissenting:

I do not feel we are bound to give full faith and credit to the California judgment under authority of the Soule case. As pointed out in MR. JUSTICE BATJER's opinion, the United States Supreme Court, the final arbiter of the meaning of the full faith and credit clause, has not said so. In effect then, the California court in Soule pronounces a rule which it hopes the United States Supreme Court will finally adopt. Whether that rule will prevail remains to be seen.

In analyzing the Soule case, it must be kept in mind that following entry of the decree granting divorce and the award of alimony to the wife, the husband, then a Montana resident, appeared specially in California and moved to vacate and delete the award of alimony, court costs and attorney fees. The California court held against his contention, his appearance then became a general one and the judgment upheld. So far as we know, the husband never contested such determination further. There is no question but that the judgment would be upheld in all California courts; but what might have happened had the wife sued on her alimony judgment in Montana? The question would then become whether Montana would be compelled to give the California decree full faith and credit under the federal constitution. That is what we are asked to do here.

I do not think we are bound by what California says is the extent of its jurisdiction. Should the United States Supreme Court say so, then the problem is resolved for all the states.

If appellant here, Willis O. Mizner, were to return to California in a special appearance and contest the decree entered in behalf of his wife for alimony, no doubt the courts of that state would apply the Soule rule, and unless he carried the question to the United States Supreme Court he would be bound.

Unless we are satisfied California had jurisdiction to personally bind appellant to the award of alimony, attorney's fees and costs, and absent a conclusive adjudication of the point under the federal constitution by the United States Supreme Court, we should not enforce the judgment in issue here. Respondent does not contend there is a determinative United States Supreme Court rule on this point, but relies principally upon the California decision in Soule.

I am not sure the rule in Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963), is even controlling in this case on the question of finality of an alimony award under an interlocutory decree, when jurisdictionally dependent upon extraterritorial service of process followed here. In the California Kraemer proceeding both parties were personally present and

litigated the issues which resulted in the interlocutory decree of divorce and the award of alimony. Two months later, the wife sued in Nevada and the husband again appeared personally. It was upon that state of the record this court said the interlocutory decree awarding alimony was final. There could not be the slightest doubt the California court had full personal jurisdiction to award alimony. Its decree was entitled to full faith and credit in Nevada under the federal constitution. See Williams v. North Carolina, 325 U.S. 226 (1944).

But that is a far cry from what happened here. Appellant, though personally served in Nevada with substitute process, never appeared in California to defend the action. The interlocutory decree of divorce and the award of alimony were entered upon his default. It is in a suit upon that judgment he now challenges for want of jurisdiction of the California court. See Estin v. Estin, 334 U.S. 541, at 549 (1948).

I think we have already taken a position in Nevada on this very point. In Summers v. Summers, 69 Nev. 83, 88, 241 P.2d 1097 (1952), Mr. Justice Badt, quoted from Estin v. Estin, supra, as follows: "But the question is whether Nevada could under any circumstances adjudicate rights of respondent under the New York judgment when she was not personally served or did not appear in the proceedings. Bassett v. Bassett, 141 F.2d 954, held that Nevada could not. We agree with that view." 334 U.S. at 547 and 548. And further: "The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an *in personam* jurisdiction over a person not before the court. That may not be done. * * * A judgment of a court having no jurisdiction to render it is not entitled to full faith and credit which the constitution and statutes of the United States demand. [citing cases]." 334 U.S. at 548 and 549.

In the face of that constitutional authority, I do not feel California can extend her jurisdiction through a statute (Cal. C.C.P. § 413) and render an in personam judgment for alimony without personal service which Nevada is required to enforce.

It seems to me there is a distinction between domestic relations cases and personal injury actions. In the latter, once a judgment is entered and affirmed on appeal it is ended. There is no continuing liability for modification and change such as there can be in alimony, child support and custody cases. That is why I think there is a different substantive due process jurisdictional requirement.

In the instant case, if California has personal jurisdiction over appellant for an initial award of alimony, it conceivably will have continuing personal jurisdiction over him to modify the alimony award for the rest of his life. Any time in the future the wife might desire to increase the amount she could file a motion or petition, personally serve the husband with notice wherever he might be, and if he fails to appear, put on her proof ex parte and get an enlarged award. This would have the effect of a personal judgment which she could then sue on wherever the husband could be found. Such a rule would tie a person to the courts of one state with the bonds of personal jurisdiction for his lifetime and even after his death through his estate.

For the reasons cited above, I doubt the rule in Gambs v. Morgenthaler, 83 Nev. 90, 423 P.2d 670, controls domestic relations cases.

I also fear the court is not making sufficient allowance for the peculiar problems arising from domestic relations litigation as compared to either tort or contract cases.

I respectfully dissent.

BATJER, J., dissenting:

I feel obligated to follow the rulings of the United States Supreme Court in Halvey v. Halvey, 330 U.S. 610 (1947), and May v. Anderson, 345 U.S. 528 (1953), and I therefore dissent from the majority opinion.

The question presented in May v. Anderson, supra, was whether, in a habeas corpus proceeding attacking the right of a mother to retain possession of her minor children, an Ohio court must give full faith and credit[1] to a Wisconsin decree awarding custody of the children to their father when that decree is obtained by the father in an ex parte divorce action in a Wisconsin court having no personal jurisdiction over the mother.

The United States Supreme Court held that the part of the Wisconsin decree awarding custody of the children to their father was not entitled to full faith and credit.

In the *May* case the only service of process upon the mother consisted of the delivery to her personally, in Ohio, of a copy of the Wisconsin summons and petition. The court found that, "Such service is authorized by a Wisconsin statute for use in

[1]Art. IV, Sec. 1 of the Constitution of the United States provides: "Full faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

an action for a divorce but that statute makes no mention of its availability in a proceeding for custody of children."[2]

In arriving at its decision the court said: "In the instant case, we recognize that a mother's right to custody of her children is a personal right entitled to at least as much protection as her right to alimony.

"We find it unnecessary to determine the children's legal domicile because, even if it be with their father, that does not give Wisconsin, certainly as against Ohio, the personal jurisdiction that it must have in order to deprive their mother of her personal right to their immediate possession."

In Estin v. Estin, 334 U.S. 541 (1948), the court said: "The fact that the requirements of full faith and credit, so far as judgments are concerned, are exacting, if not inexorable (Sherrer v. Sherrer, 334 U.S. 343 (1948)), does not mean, however, that the State of the domicile of one spouse may, through the use of constructive service, enter a decree that changes every legal incidence of the marriage relationship."

In Halvey v. Halvey, supra, the court said: "If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause. See Thompson v. Whitman, 18 Wall. 457; Griffin v. Griffin, 327 U.S. 220. And if the amount payable under a decree—as in the case of a judgment for alimony—is discretionary with the court which rendered it, full faith and credit does not protect the judgment. Sistare v. Sistare, 218 U.S. 1, 17. Whatever may be the authority of a State to undermine a judgment of a sister

---

[2]Wisconsin Statutes 1949: "262.12. Publication or service outside state, when permitted. When the summons cannot with due diligence be served within the state, the service of the summons may be made without the state or by publication upon a defendant when it appears from the verified complaint that he is a necessary or proper party to an action or special proceeding as provided in Rule 262.13, in any of the following cases:

\* \* \* \* \*

"(5) When the action is for a divorce or for annulment of marriage.

\* \* \* \* \*

"262.13. Publication or service outside state; \* \* \* mode of service.

\* \* \* \* \*

"(4) In the cases specified in Rule 262.12 the plaintiff may, at his option and in lieu of service by publication, cause to be delivered to any defendant personally without the state a copy of the summons and a verified complaint or notice of object of action as the case may require, which delivery shall have the same effect as a completed publication and mailing \* \* \*."

State on grounds not cognizable in the State where the judgment was rendered (Cf. Williams v. North Carolina, 325 U.S. 226, 230), it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered."

In May v. Anderson, supra, Mr. Justice Frankfurter in his concurring opinion, observed: "There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause."

Mr. Justice Frankfurter in his concurring opinion in Halvey v. Halvey, supra, wrote: "Conflicts arising out of family relations raise problems and involve considerations very different from controversies to which debtor-creditor relations give rise. Such cardinal differences in life are properly reflected in law. And so, the use of the same legal words and phrases in enforcing full faith and credit for judgments involving the two types of relations ought not to obliterate the great difference between the interests affected by them, and should not lead to an irrelevant identity in result."

Mr. Justice Rutledge in his concurring opinion in the *Halvey* case said: "But our function here is limited to application of the full faith and credit clause. I agree that technical notions of finality applied generally to other types of judgment for such purposes have no proper strict application to these decrees. But, even so, full faith and credit is concerned with finality and only with finality when the question arises in relation to the binding effects of judgments. And the law is clearly settled that while generally the clause requires other states to give judgments as much effect as they have where rendered, it does not require them to give more.

"Accordingly, if the state rendering the judgment gives it no final effect to prevent its alteration, I am unable to see how others having jurisdiction of the parties and the subject matter may be required to give it finality in this respect by virtue of the provision for full faith and credit."

In the case before us, the trial court has given full faith and credit to a default judgment entered in the State of California based on personal service of the complaint and summons on the appellant in Reno, Nevada. The service is alleged to be authorized by a California statute allowing personal service beyond the boundaries of the State of California when the "cause of action arose," while the appellant was domiciled in that state. The statute makes no mention of its availability in

a proceeding for divorce or annulment of marriage, and much less in an action where alimony is to be awarded to the plaintiff.

Although May v. Anderson, supra, concerns itself with child custody and the question of the court's jurisdiction to enter an in personam judgment based on personal service of process outside the state, it is sufficiently clear that the case is controlling in all in personam matters arising out of the marriage relationship.

*May* is an extremely strong case. It is not merely a situation where the United States Supreme Court is ratifying one state court's failure to give full faith and credit to an in personam judgment of another state, but instead, it precludes Ohio from giving full faith and credit to the Wisconsin judgment.

Although the Wisconsin judgment was based on personal service in Ohio pursuant to a Wisconsin statute specifically authorizing such service in divorce and annulment of marriage actions, the court in May v. Anderson, supra, said that the Wisconsin long arm statute was insufficient to give Wisconsin jurisdiction to enter an in personam judgment for child custody against the mother who had moved to Ohio. The case before us presents a weaker position.

A certain line of cases, relied upon by my brothers in the majority opinion, have subjected defendants, found beyond the territory of the forum, to the personal jurisdiction of that state on the grounds that they had certain minimum contacts with the forum, and the traditional notions of fair play and substantial justice were not offended. International Shoe Co. v. Washington, 326 U.S. 310 (1945); Travelers Health Ass'n v. Virginia, 339 U.S. 643 (1950); Perkins v. Benguet Mining Co., 342 U.S. 437 (1952); McGee v. International Life Ins. Co., 355 U.S. 220 (1957); Hanson v. Denckla, 357 U.S. 235 (1958).

While the prerequisite of "minimum contact" may be found in domestic relations cases to bridge the gap of extraterritorial service of process, the resulting judgments and decrees are not in the same category as those in cases arising out of contract, tort, or the other divisions of the legal field. The "minimum contact" doctrine cannot be properly applied to confer in personam jurisdiction to the domestic relations field.

The minimum contact theory of in personam jurisdiction cannot be reasonably applied to an alimony judgment because that type of judgment contains an element of inherent uncertainty. A change of circumstances in the status of either party, subsequent to the entry of judgment is, within the court's discretion, grounds for modification.

In light of May v. Anderson, supra, and Halvey v. Halvey,

supra, this court should not rely on Soule v. Soule, 14 Cal.Rptr., 417, (Cal.App. 1961), and should refuse to give full faith and credit to the case of Ruth E. Mizner v. Willis O. Mizner, No. 101 297, in the Superior Court of the State of California, in and for the County of Contra Costa.