603 P.2d 590

**Linda Gay BAKER, Plaintiff-Respondent,**

v.

**Michael Calvin BAKER,
Defendant-Appellant.**

No. 12719.

Supreme Court of Idaho.

Dec. 3, 1979.

Dean Williams of Kerr, Williams & Clarke, Blackfoot, for defendant-appellant.

Murray J. Sorensen of Larsen & Sorensen, Blackfoot, for plaintiff-respondent.

BISTLINE, Justice.

The defendant-appellant in this divorce action, Michael Baker, was personally served with summons and complaint at Grants Pass, Oregon, and declined to appear generally in the action. By special appearance only he raised objections in the trial court to that court's jurisdiction to make a determination of custody or an order of child support—which challenges he based upon the premise that he and the children were not in Idaho, but in Oregon when the action was commenced.

■ The sole question we decide is whether the Idaho long-arm statute, I.C. § 5–514, clothes the district courts with sufficient jurisdiction in a divorce action to render an in personam judgment against a non-appearing defendant on issues of child custody, child support, and attorney fees. We hold that it does. Finding it unnecessary to do so, we do not decide whether the Uniform Child Custody Jurisdiction Act, enacted by the 1977 legislature with an effective date of July 1, 1977, is applicable to

litigation commenced by the filing of a divorce complaint prior to that effective date.

The Bakers were married in Blackfoot, Idaho, and they and two children born to them in Blackfoot lived there continuously until Baker, following an altercation, went to Oregon. She procured the issuance of a warrant for his arrest. He called from Oregon, asking her to join him; she declined. A few days later he came to the family home in Blackfoot in the early morning, and, aided and abetted by his father and brother, and over her protests, he took the children from her and into Oregon. Mrs. Baker immediately filed an action for divorce, asking custody of the children and child support. Following his special appearance, on July 1, 1977, the trial court ruled that I.C. § 5–1001 et seq., effective that date, conferred jurisdiction upon the court to determine questions of child custody and child support.[1]

Baker, citing I.C. § 73–101, contends that the Uniform Act cannot be given application to an action pending before its effective date.[2] We need not decide this issue because we agree with Mrs. Baker's contention that the trial court was vested with in personam jurisdiction over the defendant by virtue of the long-arm statute.[3]

"There is no merit in defendant's contention that subdivision (b) is inapplicable on the ground that it was enacted after the action was filed and he had established his domicile in Arizona. Plaintiff does not rely on that subdivision to validate a service attempted before it became effective, but to permit an assumption of jurisdiction permitted by the statute at the time service was made. (See, Code Civ.Proc. § 416.) The statute governs procedure only, for it neither creates a new cause of action nor deprives defendant of any defense on the merits, and defendant has no vested right to have the jurisdiction of the courts of this state limited as it was at the time he left the state. Accordingly, subdivision (b) permits entry of a personal judgment pursuant to service made after its effective date."

1. I.C. § 5–1003, in part;

"(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

. . . . .

"(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

2. Neither party has discussed the rationale of the California Supreme Court in *Owens v. Superior Court*, 52 Cal.2d 822, 345 P.2d 921, 926 (1959) wherein the court said on this particular question:

3. We also need not decide whether Mrs. Baker's noncompliance with I.C. §§ 5–1004 and 5–1005 was fatal to jurisdiction to award custody. Baker was not served with any written notice as contemplated by these sections. His

Baker relies heavily upon *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) and *Newell v. Newell*, 77 Idaho 355, 293 P.2d 663 (1956). In both of these cases it was held that where the children were corporeally in another state when the action was commenced, and no general appearance was made by the absent spouse being sued for divorce, a decree purporting to award custody of the children was not entitled to full faith and credit, by reason of failure of an in personam jurisdiction. Baker's reliance on these cases is misplaced in that, though *May* was good law at the time, in personam jurisdiction has since been expanded beyond a state's boundaries by the long-arm statutes of the states involved in those cases.

In earlier days a divorce action was classified as an action in rem or quasi in rem since the marital status is the res. Substituted service was effective in gaining jurisdiction to dissolve the marriage, but:

"Substituted service does not warrant the rendition of a judgment in personam . . . and is ineffective to confer jurisdiction as to the personal rights and liabilities of the defendant."

*Newell v. Newell,* 77 Idaho at 363, 293 P.2d at 668.

Our long-arm statute, passed in 1961, five years after *Newell v. Newell,* as applicable here, states:

"Any person . . . who . . . does any of the acts hereinafter enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

.    .    .    .    .

"(e) The maintenance within this state of matrimonial domicile at the time of the commission of any act giving rise to a cause of action for divorce or separate maintenance."

Idaho Code § 5–514.

Baker concedes that the district court had jurisdiction to decree a divorce and a division of the marital property, since I.C. § 5–514(e) provides that the maintenance of matrimonial domicile in Idaho confers personal jurisdiction over the defendant for any cause of action for divorce arising in this state; he contends, nevertheless, that it could not award custody of the children or grant money judgments for their support. We do not agree.

■  Child custody, and support of minor children are incidents to the disposition of a divorce action. I.C. § 32–705. *Phillips v. Phillips,* 93 Idaho 384, 462 P.2d 49 (1969); *Smith v. Smith,* 67 Idaho 349, 357, 180 P.2d 853, 858 (1947).

If the district court acquired an in personam jurisdiction over Baker by reason of the provisions of I.C. § 5–514(e), that jurisdiction extended to all facets of the divorce cause of action, and was as complete as it would have been had Baker been personally served in Idaho, or had he appeared generally in the action.

■  We must also consider the actions of the legislature in including divorce actions as being within the purview of the long-arm statute. Clearly that purpose was *to extend* the in personam jurisdiction of the courts of this state in divorce cases over those defendants who were maintaining matrimonial domicile in this state when the cause of action for divorce arose. If we were to hold with appellant that § 5–514(e) only authorizes the award of a divorce decree and the distribution of marital property located in this state, we would in effect be holding that the legislature was engaged in a useless endeavor in enacting said sub-

attorney, present in court on a special appearance, was orally apprised by the court of potential jurisdiction under the Act, and afforded the 20 days required by I.C. § 5–1005. I.C. § 5–1012 might be said to require that notice be given according to the statutory provisions of I.C. § 5–1005(1), (2), (3), or (4). We note that the statute primarily requires notice to be given

in a manner reasonably calculated to give "actual notice," and that it *"may be"* in the provisions of the four subparagraphs. Other than that Baker's counsel was only in court to assert that Baker was not in court, the trial court's method of giving notice could hardly be said to be ineffective.

section (e). This is so simply because prior to the enactment of our long-arm statute the courts of this state already had sufficient jurisdiction to dissolve the marriage and make disposition of property within the state. It is logical to infer that the legislature, in enacting our long-arm statute, was well aware of its own previous enactments and the decisions of this Court pertaining to those enactments.

This Court has held that our long-arm statute is to be "liberally construed." *Intermountain Business Forms, Inc. v. Shepard Business Forms*, 96 Idaho 538, 540, 531 P.2d 1183, 1185 (1975). Moreover, Idaho Code § 5–514 exhibits a legislative intent to exercise "all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." *Doggett v. Electronics Corp. of America, Combustion Control Division*, 93 Idaho 26, 30, 454 P.2d 63, 67 (1969).

In *Owens v. Superior Court of Los Angeles County*, 52 Cal.2d 822, 345 P.2d 921 (1959), the Supreme Court of California had before it Section 417 of the California Code of Civil Procedure providing that:

" 'Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service.' "

345 P.2d at 922.

The defendant in that personal injury case was personally served in Arizona in which state he was a permanent resident at the commencement of plaintiff's action in California.[4] Accordingly the Court noted that jurisdiction under Section 417 had to be based on the defendant's California residence when the cause of action arose. Defendant argued that his being a California

resident when the cause of action arose was insufficient to subject him to an in personam jurisdiction.

Justice Traynor writing for the California court discussed the earlier case of *Allen v. Superior Court*, 41 Cal.2d 306, 259 P.2d 905 (1953), observing that the constitutional limitations of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), had there been reviewed against the redefinition of those limitations in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940):

"It was against this background that the Legislature enacted section 417, and we concluded that as 'so based on the broad authority of sections 412 and 413, section 417 is manifestly designed to restrict the power of the court if a personal judgment is to be entered. Thus its operation is made dependent on defendant's residence within the state either at the time of commencement of the action or time of service, and on his personal service with summons.' 41 Cal.2d at page 312, 259 P.2d at page 908. We held that personal jurisdiction could constitutionally be based on the defendant's domicile here at the time of the commencement of the action, stating:

" 'One main objection to service by publication on a person residing outside of the state is that due process requires fair notice. This was a consideration in *Milliken v. Meyer*, supra, 311 U.S. 457, 61 S.Ct. 339, [85 L.Ed. 278,] upholding a personal judgment against a domiciliary based on the personal service of process while absent from the state. It was there said, at page 464 of 311 U.S., at page 343 of 61 S.Ct.: "One * * * incident of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent par-

---

4. In the instant case it is neither contended, conceded, nor established that Baker was other

than an Idaho resident when he was served with process. All indications are that he was.

ty of the proceedings against him." The same principle on analogous reasoning applies where a domiciliary at the time of the commencement of the action thereafter changes his state of residence and is personally served with process in the latter state. As a citizen of the state wherein the action was commenced, he had certain responsibilities arising out of his relationship to that state by reason of domicile, one of which was amenability to suit therein. Such relationship and responsibility based on citizenship within the state are not terminated by his subsequent removal to another state, and he may be served with process pursuant to a method reasonably designed to give him notice of the proceedings brought against him in the courts of the state of his original domicile prior to his departure therefrom. We therefore conclude that section 417 satisfies the requirements of procedural due process, for no more certain provision for defendant's receipt of actual notice of the institution of litigation against him could be made than through the specified personal service of process. *Milliken v. Meyer*, supra, 311 U.S. 457, 463, 61 S.Ct. 339 [, 85 L.Ed. 278;] see 40 Cal.L.Rev. 156.' 41 Cal.2d at pages 312–313, 259 P.2d at page 908.

"Defendant contends that since amenability to suit is a responsibility growing out of domicile in the state, it ceases when such domicile ceases. In the *Allen* case we held, however, that it did not cease if the action was commenced before the defendant changed his domicile to another state. The responsibilities arising out of domicile and its existence at the time the action was commenced were held sufficient to secure jurisdiction by service outside the state although the defendant had changed his domicile before service was made."

.    .    .    .    .

"Accordingly, even if domicile alone at the time the cause of action arose does not justify personal jurisdiction pursuant to sections 412 and 413, other contacts with the state either alone or together

with such domicile may fully support such jurisdiction. . . .

"In the present case the cause of action arose out of defendant's activities in this state, namely, his ownership and possession of the offending dog. This fact alone is sufficient under the Due Process Clause to permit the courts of this state to assert personal jurisdiction over him.

"In *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, the Court stated: 'Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." '

.    .    .    .    .

"Even if we were to assume that an activity carried on within the state out of which the cause of action arose must be of some peculiarly dangerous or serious kind to justify an assertion of jurisdiction, no such limitation exists if the defendant was also domiciled in the state at the time the cause of action arose. When, as in this case, the cause of action arose here out of an activity carried on here at a time when defendant was domiciled here, 'the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure' (*International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95) fully justifies subjecting defendant to the jurisdiction of

our courts. *Henry R. Jahn & Son, Inc. v. Superior Court*, 49 Cal.2d 855, 862, 323 P.2d 437; *Carl F. W. Borgward, G. M. B. H. v. Superior Court*, 51 Cal.2d 72, 79, 330 P.2d 789."

*Owens*, 345 P.2d at 923–925.

Two years later a California District Court of Appeal had before it a defendant who had been a Montana resident at the time the action was commenced and when and where he was served with process. On his not appearing in the California proceeding the court entered his default, and the interlocutory decree ordered him to pay alimony, attorneys fees and court costs. Thereafter the defendant appeared specially, unsuccessfully, by a motion challenging the court's jurisdiction to make all provisions of the decree other than the plaintiff's entitlement to a divorce.

"Since the defendant was residing in Montana at the time the action was commenced and at the time of service, jurisdiction under section 417 of the Code of Civil Procedure must be based upon his residence here at the time the cause arose (subd. (b)).

"'As used in section 417, resident means domiciliary.' *Owens v. Superior Court*, 52 Cal.2d 822, 827, 345 P.2d 921, 922, citing *Smith v. Smith*, 45 Cal.2d 235, 240, 288 P.2d 497. In the instant case, defendant was a California domiciliary at the time the cause of action arose. Defendant contends, however, that this fact was not sufficient to permit the state to acquire jurisdiction over him by personal service outside its borders, although he concedes that the California court had jurisdiction over the 'matrimonium,' i. e., the *res* of the marriage. He argues that at the time the action was brought and thereafter at the time service was made, he was domiciled in Montana, and that under the due process clause of the fourteenth amendment to the Constitution of the United States, in personam jurisdiction must be based upon such facts or upon consent."

*Soule v. Soule*, 193 Cal.App.2d 443, 14 Cal. Rptr. 417, 418 (1961). Relying on *Owens*, *supra*, the court concluded:

"By analogy, what was said in the *Owens* case applies equally to this case. There it was held that section 417, subdivision (b), did not violate the requirements of the due process clause of the federal Constitution. Appellant's arguments and contentions are fully disposed of by the opinion in that case and need not be repeated here."

14 Cal.Rptr. at 419.

In 1968 the Supreme Court of Nevada extended full faith and credit to a California decree awarding alimony. The matrimonial domicile of the parties was in California; the defendant moved to Nevada. The wife brought a divorce action in California, and in that action service of process was made on the husband in Nevada, where the husband had initiated a divorce action against the wife. The wife appeared in the Nevada action, asserting that the husband was bound by the California adjudication:

"His attack on appeal is directed solely to the validity of that part of the interlocutory judgment which awards alimony, contending that the California court was without jurisdiction to enter an in personam judgment upon extraterritorial personal service of process. It is his position that the Due Process Clause precludes jurisdiction, and he reminds us that in 1877 the Supreme Court of the United States established the rule that a court may take personal jurisdiction over the defendant only if process was served upon him personally within the state. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565.

. . . . .

". . . it seems to us that the minimum contacts concept of in personam jurisdiction is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this time that strict

application of the *Pennoyer* rule to family support cases has encouraged migratory divorce by offering a shield to a spouse wishing to avoid financial responsibility. The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy 'traditional notions of fair play and substantial justice.' The demands of due process are satisfied in these circumstances. The dissenting opinion suggests that *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), is contra. Reliance upon that case is misplaced. In *May*, there was no statute authorizing service outside the state on the mother in a child custody case, nor did the court consider whether personal jurisdiction could be based upon past contacts with the state. Thus, the problem confronting us was not reached in *May*." *Mizner v. Mizner*, 84 Nev. 268, 439 P.2d 679, 680–681, cert. denied, 393 U.S. 847, 89 S.Ct. 130, 21 L.Ed.2d 117 (1968) (footnotes omitted).[5]

In *May, supra*, Justice Jackson in dissent provided the following bit of wisdom which was surely later to encourage the drafters of the various long-arm statutes to include divorce causes of action within their purview:

"The Wisconsin courts cannot bind the mother, and the Ohio courts cannot bind the father. A state of the law such as this, where possession apparently is not merely nine points of the law but all of them and self-help the ultimate authority, has little to commend it in legal logic or as a principle of order in a federal system."

345 U.S. at 539, 73 S.Ct. at 846, 97 L.Ed. at 1230.

The intent of the Idaho legislature in regard to such vexatious matters is found in both the enactment of our version of the long-arm statute and, in turn, in the adoption of the Uniform Child Custody Jurisdiction Act.[6]

The district court acquired an in personam jurisdiction over the defendant, since the divorce cause of action arose while the matrimonial domicile was in the state of Idaho at the time of the conduct giving rise to the plaintiff's cause of action. We further hold that Idaho statutory and case law has recognized that incident to a divorce action are issues of child custody, child support, attorneys fees, and court costs. The service of process upon Baker was made at a time when he was subject to the jurisdiction of the courts of this state: both under our interpretation and application of our long-arm statute, and the holding of *Milliken v. Meyer, supra*. Accordingly the service of process made upon him in Oregon had "the same force and effect as though summons had been personally served within this state." I.C. § 5–515. Nothing in the procedures which here took place in any way

---

5. Of interest is that Nevada at that time did not have any long-arm statute. Nevada's statute appears to have been first enacted in 1969.

6. Section 1, now I.C. § 5–1001 of the Uniform Act declares among the Act's purposes to:

"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

. . . . .

"(3) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

. . . . .

"(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards; . . . ."

**642**

offends notions of fair notice and due process. Baker at all times knew of the pendency of the action, employed counsel, appeared specially, was granted additional time in which to appear generally, was even allowed through counsel to cross-examine the plaintiff, and appeared before the district court after the divorce decree was entered upon his default seeking a temporary stay of all of its provisions, other than the dissolution of the marriage, while he processed this appeal.

Baker complains here of the district court's refusal to enter the stay order by which he sought the return of the children, Mrs. Baker having gathered them up in Oregon following the entry of the final decree which awarded custody to her. While it might be said that his voluntary appearance in district court seeking such affirmative relief constituted a general appearance, it was by that time irrelevant because he was already subject to the in personam jurisdiction of the court. The district court saw no reason why he should be awarded any such relief; nor do we.

The judgment is affirmed in all respects. Attorneys fees having been sought by Mrs. Baker in resisting the appeal, the same are awarded together with costs of appeal.

DONALDSON, C. J., and McFADDEN, J., concur.

SHEPARD and BAKES, JJ., concur in result.