NEVADA TAX COMMISSION; DEPARTMENT OF TAXATION, THE STATE OF NEVADA, Appellants, v. NEVADA CEMENT COMPANY, Respondent.

No. 33178

December 12, 2001                    36 P.3d 418

*Frankie Sue Del Papa,* Attorney General, and *Elaine S. Guenaga,* Senior Deputy Attorney General, Carson City, for Appellants.

*Paul D. Bancroft,* Incline Village, for Respondent.

Before YOUNG, AGOSTI and LEAVITT, JJ.

# OPINION ON REHEARING

*Per Curiam:*

On September 15, 2000, we issued an opinion reversing the district court's order and remanding this matter to the district court.[1] Subsequently, respondent Nevada Cement Company filed a petition for rehearing, and we directed a response from the Nevada Tax Commission. We have reviewed the parties' submissions, and we conclude that rehearing is warranted to clarify our statement of the primary-purpose test, used to determine whether certain manufacturing equipment is subject to a sales and use tax. We further conclude that rehearing is not warranted on the other grounds asserted by Nevada Cement. Accordingly, we grant rehearing in part, withdraw our prior opinion and issue this opinion in its place.

In this appeal, we consider whether certain equipment purchased by Nevada Cement for use in manufacturing cement, but which also contributes necessary ingredients to the cement, is subject to taxation as a retail sale, or is exempt from taxation as a sale for resale. In determining the equipment's taxability, one must look to its primary purpose. Because Nevada Cement purchased the equipment primarily for use in manufacturing the cement, it was subject to taxation as a retail sale.

## FACTS

Nevada Cement manufactures and sells cement. Cement manufacturing involves the crushing and mixing together of various ingredients in an abrasive and heat-intensive process. The ingredients include limestone, clay, iron and gypsum. Throughout the manufacturing process, measurements are taken to evaluate and regulate the amounts and proportions of these ingredients in the product.

The manufacturing process begins when limestone, clay and iron are crushed into a raw mix. The raw mix is then heated in a kiln to temperatures over 2,000 degrees. The extreme heat is dis-

---

[1]*State, Tax Comm'n v. Nevada Cement Co.,* 116 Nev. 877, 8 P.3d 147 (2000).

tributed throughout the mix by a kiln chain. A chemical reaction causes some of the mix to liquefy, and the raw mix then becomes "clinker," which is a rock-like substance. The clinker is cooled, then mixed with gypsum and crushed into a fine powder, which is the finished product.

Nevada Cement purchased many pieces of equipment for manufacturing cement, four of which are relevant here: (1) steel grinding balls used for crushing; (2) steel kiln chains used for distributing heat; (3) kiln bricks used to line the kiln and protect it from the intensive heat; and (4) castable materials used to protect the passageways through which the manufactured product passes.

Because the manufacturing process is so hot and abrasive, this equipment gradually disintegrates over time, as pieces of the equipment flake off and become incorporated into the finished cement product. The portion of the equipment that does not completely disintegrate into the raw mix is eventually removed, crushed and introduced back into the mix. The equipment's gradual disintegration is inevitable, but taken into account; because the equipment is composed of iron, less iron is added to the raw mix at the outset. The wearing down of the various parts adds just under one percent of the total iron needed in the manufacturing process.

Thus, the equipment has a dual purpose: (1) use in manufacturing the cement by crushing, distributing heat, and protecting the kiln and passageways; and (2) contribution of ingredients to the final cement product. This dual purpose is important for determining the equipment's taxability. Generally, sales and use taxes are imposed on tangible personal property sold at retail.[2] In contrast, no tax is imposed on tangible personal property that is sold for resale.[3] The purpose of the sale-for-resale tax exemption is to prevent taxes on intermediate purchases, and to ensure that only the final sale to the customer gets taxed.[4]

Here, Nevada Cement initially paid either sales or use tax on the equipment it purchased. Nevada Cement later requested a refund, but the Nevada Department of Taxation denied the request. Nevada Cement then filed a petition for redetermination. According to Nevada Cement, because the equipment disintegrated during the manufacturing process and eventually became incorporated into the finished cement product which is sold, the equipment was purchased in part for resale, and thus was tax

---

[2]*See* NRS 372.105; NRS 372.185(1).

[3]*See* NRS 372.050; NRS 372.075; NRS 372.185(2).

[4]Jerome R. Hellerstein & Walter Hellerstein, *State and Local Taxation* 697 (6th ed. 1997).

exempt. Nevada Cement's refund claim included the four pieces of equipment at issue here, which were wholly consumed in the manufacturing process, as well as seven other pieces of equipment that were only substantially consumed. The matter proceeded to an administrative hearing, after which the Department hearing officer denied the entire refund claim. On administrative appeal, the Commission upheld the hearing officer's decision and denied the refund claim. The Commission determined that the equipment was subject to tax as a retail sale because it was purchased for the purpose of manufacturing and producing the cement.

Nevada Cement then filed a petition for judicial review with the district court. In its petition, Nevada Cement pursued a refund for only the four items wholly consumed in the process: steel grinding balls, steel kiln chain, kiln brick, and castables. The district court granted the petition and reversed the Commission's decision. In the district court's view, the administrative decisions erroneously adopted a primary-purpose test. The district court applied a physical-ingredient test and concluded that the equipment contributed significantly to the final cement product that was resold. Consequently, the court concluded that the equipment was tax exempt and granted Nevada Cement's refund claim. The Commission then appealed.

## DISCUSSION

This court's review of an administrative decision is identical to that of the district court.[5] Questions of law, including the administrative construction of statutes, are subject to independent appellate review.[6] Conversely, this court will not substitute its judgment for that of the agency on a question of fact.[7] An agency's factual determinations will be upheld if supported by substantial evidence.[8]

The sales and use taxes at issue in this case are codified under Nevada's Sales and Use Tax Act, NRS Chapter 372. A sales or use tax must be paid on all tangible personal property "sold at retail."[9] Specifically, the sales tax is imposed on "the sale of all

---

[5]*See SIIS v. Engel,* 114 Nev. 1372, 1374, 971 P.2d 793, 795 (1998).

[6]*Id.*

[7]*See* NRS 233B.135(3); *Campbell v. State, Dep't of Taxation,* 109 Nev. 512, 515, 853 P.2d 717, 719 (1993).

[8]*See Bing Constr. v. State, Dep't of Taxation,* 109 Nev. 275, 278, 849 P.2d 302, 304 (1993).

[9]NRS 372.105; NRS 372.185.

tangible personal property sold at retail in this state."[10] The use tax is the complement to the sales tax, and is imposed on "the storage, use or other consumption in this state of tangible personal property . . . which was acquired out of state in a transaction that would have been a taxable sale if it had occurred within this state."[11] Generally, the use tax is "a way for Nevada to tax transactions outside the state that would otherwise escape sales taxation."[12]

In contrast to a retail sale, items that are sold for resale are tax exempt. These items are purchased for the purpose of being resold. More specifically, no sales tax applies to property purchased for resale in the regular course of business. This sale-for-resale exemption from the sales tax is found under the definition of "retail sale" in NRS 372.050, which provides that a retail sale is "a sale for any purpose other than resale in the regular course of business of tangible personal property."

The sale-for-resale exemption also applies to the use tax. The use tax is imposed on property "acquired out of state in a transaction that would have been a taxable sale if it had occurred within this state."[13] Thus, to determine whether a transaction would have been a taxable sale within this state, one must look to the applicable sales tax statutes and the definition of "retail sale" under NRS 372.050. In addition, no use tax applies to property stored in this state for the purpose of sale in the regular course of business.[14]

Nevada Cement's liability for taxes on the equipment depends upon whether its purchase constituted a retail sale or a sale for resale. If the equipment had been purchased for the sole purpose of use in manufacturing the cement, it would be a retail sale subject to taxation. If, on the other hand, the equipment had been purchased for the sole purpose of reselling it, the transaction would be a sale-for-resale, and tax exempt. But the tax issue is not so simple when considering the dual purpose items at issue here. Nevada Cement's equipment not only aids in manufacturing the cement, but also contributes necessary ingredients to the final cement product, which is resold. This dual purpose led to the parties' dispute over whether a physical-ingredient test or a primary-purpose test should apply under the tax statutes.

Nevada Cement contends that the district court properly applied

---

[10]NRS 372.105.

[11]NRS 372.185(1) and (2).

[12]*State, Dep't Taxation v. Kelly-Ryan, Inc.*, 110 Nev. 276, 280, 871 P.2d 331, 334 (1994); *see also* 85 C.J.S. *Taxation* § 1992 (2001).

[13]NRS 372.185(2).

[14]NRS 372.075.

a physical-ingredient test to determine that the items at issue in this case are tax exempt. Nevada Cement argues that under a physical-ingredient test, when an item becomes a physical ingredient or a component of the finished product, it is a sale for resale, and is excluded from taxation. Under Nevada Cement's test, the degree of incorporation is irrelevant. Property is tax exempt as long as some portion, no matter how insignificant, is incorporated into the finished product.

In support of a physical-ingredient test, Nevada Cement does not focus on the retail sale statute, NRS 372.050. Instead, Nevada Cement asserts that NRS 372.080, a specific use tax exemption for exported property, clearly states the test. NRS 372.080 exempts from use taxation personal property acquired outside of Nevada[15] and thereafter kept or retained in Nevada for the purpose of ''being processed, fabricated or manufactured into, attached to, or incorporated into, other tangible personal property to be transported outside the state and thereafter used solely outside the state.''

Nevada Cement also cites to a 1955 opinion by the Attorney General[16] (''Opinion 74'') that examined the definition of ''storage'' and ''use'' in NRS 372.080 to determine whether use of scrap iron in the Nevada portion of a multi-state mining process was excluded from Nevada's use tax. In that case, some of the iron was absorbed into the copper precipitates, which were then transported outside Nevada for further refining.[17] Opinion 74 concluded that the iron was excluded from the use tax because the iron remained incorporated in the product while it was undergoing processing in Nevada.[18]

The Commission relies on NRS 372.050(1), which defines ''retail sale'' as ''a sale for any purpose other than resale in the regular course of business of tangible personal property.'' As explained above, this provision exempts sales-for-resale from the sales and use tax. The Commission argues that the language of NRS 372.050 sets forth a primary-purpose test, under which one must look to the primary purpose of the sale. According to the Commission, all sales for *any* purpose other than resale are subject to sales and use tax. Accordingly, the Commission argues that if any purpose of a dual-purpose item is not resale, the sales and use tax apply under a primary-purpose test. We note that the Commission essentially asks us to apply a sole-purpose test, rather than a primary-purpose test.

---

[15]A use tax is imposed on property acquired out of state. NRS 372.185(2).

[16]55-74 Op. Att'y Gen. 180 (1955).

[17]*Id.*

[18]*Id.* at 182.

We conclude that under either NRS 372.050 or NRS 372.080, a primary-purpose test applies. Both statutes are susceptible to more than one reasonable interpretation. NRS 372.050's language, defining a taxable "retail sale" as a sale of property *for any purpose* other than resale, could suggest a primary-purpose test as well as a sole-purpose test. Similarly, NRS 372.080, exempting from taxation the keeping, retaining, or exercising power over property *for the purpose of* being processed, fabricated or manufactured into, attached to, or incorporated into, other tangible personal property, could suggest a sole-purpose test, a primary-purpose test, or a physical-ingredient test. Thus, these statutes are ambiguous, and we look to the legislature's intent, and construe them in line with what reason and public policy indicate.[19]

Reason and public policy suggest that the legislature intended a primary-purpose test to apply under both NRS 372.050 and NRS 372.080. Although the legislative history is silent on the meaning of these statutes, both focus on the purpose of the property. Additionally, if, as the Commission suggests, property is taxable under NRS 372.050 when any purpose is not resale, then all dual-purpose items would be taxed even if the taxable use (manufacturing) were insignificant. Similarly, if a sole-purpose test applied under NRS 372.080, all dual-purpose items would be taxed. Under Nevada Cement's physical-ingredient test, a dual-purpose item would always be tax exempt under NRS 372.080, even if the tax-exempt use (physical incorporation) were merely incidental. Thus, both the sole-purpose and the physical-ingredient tests would likely produce inequitable results, one by taxing too much and the other by not taxing enough. Applying a primary-purpose test under both statutes allows a more meaningful determination of whether property is purchased for a taxable or a tax-exempt use.

Accordingly, we adopt the primary-purpose test described by the California Supreme Court in *Kaiser Steel Corp. v. State Board of Equalization.*[20] California, like Nevada, imposes a tax on all tangible personal property sold at retail in the state.[21] The California statute defining "retail sale" is nearly identical to Nevada's: "a sale for any purpose other than resale in the regu-

---

[19]*See McKay v. Bd. of Supervisors,* 102 Nev. 644, 649, 730 P.2d 438, 442 (1986).

[20]593 P.2d 864 (Cal. 1979); *see also* Larry J. Stroble & Sandra Cha Sifferlen, *Sales Tax Exemptions in Retailing and Manufacturing: Resolving Mixed-Use Situations,* 4 J. Multistate Tax'n 244, 245-46 (1995) (discussing primary-purpose test).

[21]Cal. Rev. & Tax. Code § 6051 (West 1998).

lar course of business in the form of tangible personal property.''[22] In *Kaiser Steel,* the court considered whether materials purchased to aid in steel manufacturing, but which also became components of the finished product, were taxable as a retail sale. The materials were first used in the steel manufacturing process, and then formed a by-product called ''slag,'' which Kaiser sold. The question was whether the materials were purchased for a purpose other than resale (that is, to aid in manufacturing steel) and thus subject to tax, or were purchased for the purpose of resale in the form of slag, and thus tax exempt.[23]

In adopting a primary-purpose test, the *Kaiser Steel* court held that one must look to the primary purpose of the purchase in determining whether a sale is taxable.[24] The court upheld as reasonable the State Board of Equalization's determination that Kaiser purchased the materials primarily for the purpose of manufacturing steel, and thus concluded that the materials were subject to the tax.[25]

Thus, in determining whether manufacturing equipment is taxable under NRS 372.050 and NRS 372.080, one must consider the equipment's primary purpose. If the property is purchased primarily to aid the manufacturing process, it is taxable, despite the fact that some portion becomes a part of the finished product. Conversely, if the property is purchased primarily for incorporation into the final product, it is not taxable, despite the fact that some portion may assist the manufacturing process.[26] The district court erred by applying a physical-ingredient test and by allowing a tax exemption.

Our decision finds support in the Department's tax regulation pertaining to property used in manufacturing. We have previously stated that the interpretation by the agency charged with administering a statute is persuasive, and that great deference should be given to that interpretation if it is within the language of the

---

[22]*Id.* § 6007.

[23]593 P.2d at 865-66.

[24]*Id.* at 866.

[25]*Id.* at 868-69. The *Kaiser Steel* court recognized that the California State Board of Equalization has permitted tax apportionment ''if the purchaser can establish what portion he is using for the exempt purpose and what portion for the nonexempt purpose,'' although apportionment was not applicable in that case. *Id.* at 869. We need not consider a tax apportionment argument in the present case, however, because it was not raised by the parties.

[26]*Id.* at 867.

statute.[27] NAC 372.370(1) states that a tax applies to the sale of tangible personal property purchased "for the purpose of use in manufacturing, producing, or processing tangible personal property and not for the purpose of physically incorporating it into the manufactured article to be sold." Subsection (2) of that regulation states that a tax does not apply to the sale of tangible personal property purchased "for the purpose of incorporating it into the manufactured article to be sold." NAC 372.370 focuses on the purpose for which property is purchased. The requirement that the purpose be "primary" is implicit. NAC 372.370 is therefore consistent with NRS 372.050, and sets forth a primary-purpose test.

In so holding, we reject Nevada Cement's additional contention that the Department has historically followed a physical-ingredient test, and has only recently adopted a primary-purpose test in these proceedings. Nevada Cement argues that this change in policy constitutes rulemaking in violation of the Nevada Administrative Procedures Act, which requires notice and public hearing for all proposed regulations or amendments to existing regulations.[28] The Department did not engage in rulemaking; it simply determined how the relevant statutes operated in a specific context.[29] Moreover, because this court independently reviews the relevant statutory provisions, the Department's position is not controlling.

We note that NRS 372.080 is a very specific use tax statute applying only in limited factual circumstances. In particular, as a use tax, it only applies to property purchased outside of this state.[30] Further, it applies to property that is merely stored or processed into other property within Nevada, and is then exported. Here, the record does not indicate the extent to which Nevada Cement either purchased its equipment outside the state or exported its cement. However, under either NRS 372.080 or NRS 372.050, Nevada Cement's equipment is subject to a primary-purpose test.

Under a primary-purpose test, the equipment is taxable as a retail sale. The Department's hearing officer determined that Nevada Cement failed to provide sufficient evidence that it purchased the equipment primarily for the purpose of physically incorporating it into the finished product. The Commission found

---

[27]*See Collins Discount Liquors v. State of Nevada,* 106 Nev. 766, 768, 802 P.2d 4, 5 (1990); *Nevada Power Co. v. Public Serv. Comm'n,* 102 Nev. 1, 4, 711 P.2d 867, 869 (1986).

[28]*See* NRS 233B.060.

[29]*See K-Mart Corporation v. SIIS,* 101 Nev. 12, 16-17, 693 P.2d 562, 565 (1985).

[30]*See* NRS 372.185.

that the equipment was purchased for the purpose of use in manufacturing, producing or processing tangible personal property. These administrative factual determinations are supported by substantial evidence.

The record demonstrates that Nevada Cement purchased the equipment for the primary purpose of use in manufacturing, and not for the primary purpose of contributing ingredients to the final product. While Nevada Cement accounted for the equipment's contribution of iron to the cement, that contribution was only a secondary purpose. The equipment's gradual disintegration and incorporation into the cement was an unavoidable consequence of the abrasive and heat-intensive manufacturing process. Accordingly, Nevada Cement was not entitled to a tax refund, and the district court erred in granting the refund claim.

## CONCLUSION

The primary-purpose test is the proper test to analyze proposed exemptions under NRS 372.050 and NRS 372.080, and the district court erred in applying the physical-ingredient test. Additionally, the record contains substantial evidence to support the Commission's determination that Nevada Cement purchased the equipment for the primary purpose of using it in manufacturing; therefore, the purchase was a retail sale subject to taxation. Accordingly, we reverse the order of the district court holding that Nevada Cement is entitled to a refund and remand this matter to the district court with instructions to reinstate the Commission's decision.